CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 14 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **ROBERT PHAROAH HOWARD,** | ) | CASE NO. 7:12CV00079 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | |
| | ) | |
| | ) | |
| **J. STATZER, ET AL.,** | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Before the court are the parties' motions for summary judgment, plaintiff's motions regarding discovery, default, and other matters, and motions by some defendants who are seeking a protective order against plaintiff's requests for discovery until the court addresses their qualified immunity defense as a threshold issue.[1] After careful review of the record, the court denies Howard's motion for default judgment against Defendant J. Statzer, grants Howard's motion for voluntary dismissal of Claim 1; finds that defendants are entitled to qualified immunity as to Claim 2, but not as to Claim 3; dismisses Claim 4 without prejudice; denies defendants' motions for protective order; and sets a schedule for discovery as to Claim 3.[2]

## A. Howard's Claims

Robert Pharoah Howard, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, naming the following defendants in its title: J. Statzer, James Lambert, D. McGowan, Vicki Phipps, S. Looney, E. Mullins, L.B. Phipps, S. Fields,

---

[1] Defendant V. Phipps has filed a motion for summary judgment on the ground of qualified immunity and on the merits of Howard's claims. The other defendants ("the security defendants"), who are represented by separate counsel, have also filed a motion for summary judgment, arguing that they are entitled to qualified immunity and that Howard's claims are without merit. The security defendants have also moved for protective order.

[2] Other pending motions will be addressed by separate order(s).

Whisenhunt, Head, C.S. Payne, and D. L. Tate, Jr. Liberally construed, Howard's complaint and attachments allege the following claims for relief under § 1983 against prison officials at Red Onion:

1. On October 20, 2011 officers S. Looney and E. Mullins searched Howard's cell and reported finding an 8-inch, homemade shank, which Looney and Mullins had previously placed there;

2. On October 21, 2011, Howard filed an emergency grievance about having severe chest pains and Defendants V. Phipps, Statzer, Lambert, and McGowan delayed his access to medical assessment or treatment;

3. On November 7, 2011, pill pass officers S. Fields, Whisenhunt, and Head attacked Howard with the pill pass box, causing puncture wounds in his left forearm and cutting his wrist, and Sgt. L. B. Phipps sprayed pepper spray on Howard without medical authorization, while Tate supervised.

4. After prison officials wrongfully removed Howard from the Common Fare Diet, Quinn Reynolds promised to correct the mistake, but failed to do so.

As relief in this action, Howard seeks compensatory and punitive damages.[3]

### B. Howard's Motion for Default

Howard moves for entry of default judgment against Defendant J. Statzer (ECF No. 74). Howard asserts that, based on the record, this defendant has failed to appear in the action within the time allowed for his appearance. Statzer waived service on May 25, 2012, and then had 60 days from May 2, 2012—until July 2, 2012—to file a timely response to Howard's complaint.

---

[3] In his complaint, Howard also sought injunctive relief directing that he be transferred. Because Howard was transferred from Red Onion to Wallens Ridge State Prison after filing this complaint, his demand for injunctive relief against the Red Onion officers named in this action is moot. See Magee v. Waters, 810 F.2d 451 (4th Cir. 1987). His claims for monetary damages, however, survive his relocation. See Mawhinney v. Henderson, 542 F.2d 1 (2d Cir. 1976).

On July 2, the court granted a defense motion for 30 additional days to respond, and on August 1, 2012, within that timeframe, Statzer and other defendants filed an answer. Because the record thus does not indicate that Statzer is in default, the court will deny Howard's motion for default judgment as meritless.

### C. Howard's Motion to Dismiss Claim 1

Howard moves, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, to dismiss his claim against Defendants S. Looney and E. Mullins. As these individuals are the only defendants identified in Claim 1 of the complaint, the court construes Howard's submission as a motion for voluntary dismissal of Claim 1. Defendants have not objected, and the court cannot find that they will be unduly prejudiced by the requested disposition. Accordingly, the court will grant Howard's motion for voluntary dismissal of Claim 1. Because Howard alleges no other claims against Looney and Mullins, they will be terminated as parties to the action, and Howard's motion for default judgment regarding this claim (ECF No. 58) will be dismissed as moot.

### D. Claim 2: Medical Needs

**1. Howard's Allegations**

Liberally construed, Howard's factual allegations concerning Claim 2 offer the following sequence of events. On October 21, 2011, at 7:00 a.m., Howard completed an emergency grievance ("ERG"), Tracking No. 032121, to inform medical staff that he was suffering severe chest pains and breathing trouble, which he thought might be symptoms of a mild heart attack. (ECF No. 1, p. 2; 1-2, pp. 1-2) J. Statzer signed the receipt for an ERG from Howard on October 21, 2011. (ECF No. 1-1, p. 2) Procedures require staff to write a response to an inmate's ERG and return it to him within 8 hours. When Defendant McGowan came to Howard's cell at 7:45

3

a.m., Howard asked McGowan to take him to medical "d[ue] to his mild heart attack," and McGowan said that Howard must be alright because he was yelling. (ECF No. 31.)[4]

No one from the medical unit came to check Howard's pulse, blood pressure, or temperature, and no one performed an echocardiogram. When Howard had not received a response to the ERG or a medical assessment by that evening, he filed a second ERG at 7:45 p.m. Two nurses examined Howard later that night, found him ambulating in his cell, took his vital signs, and referred him to see Dr. McBride. The doctor examined Howard on October 23, 2011 and prescribed baby aspirin to "protect" Howard's heart.[5]

On October 26, 2011, Vicki Phipps received Howard's October 21, 2011 informal complaint about the lack of response to his 7:00 a.m. ERG. Phipps responded that the medical department had no record of receiving ERG 032121 on October 21, 2011. (ECF No. 1-1, p. 1.) Statzer told Howard that he remembered taking Howard's 7:00 a.m. ERG to the medical unit and giving it to a medical administrator, but did not remember who that person was. When Howard filed a regular grievance about the lack of response to ERG 032121, the warden ruled the grievance "FOUNDED" because the ERG was not returned to Howard within the prescribed time frame.

Howard alleges that the defendants knew he had a history of heart trouble before October 2011, including two prior heart attacks, in 1997 and 2005. Howard complains that because no

---

[4] The court notes that Howard's motion for summary judgment bears some resemblance to the form complaint defined in Rule 10(a) of the Federal Rules of Civil Procedure, with numbered paragraphs stating specific facts against specific defendants. This document is not signed under penalty of perjury, but in the spirit of liberally construing a pro se litigant's pleadings, Erickson v. Pardus, 551 U.S. 89, 94 (2007), the court has relied on it as Howard's clearest statement of his alleged claims.

[5] Some of Howard's submissions allege that the doctor prescribed baby aspirin for Howard two days before, rather than two days after, the October 21, 2011 incident.

one responded within 8 hours to the 7:00 a.m. ERG to take his vital signs or run tests, no one will ever "know if [he] had a mild heart attack at 7:00 a.m. on" October 21, 2011.

## 2. Applicable Law

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009)). Qualified immunity also protects officers who are sued for conduct that does not violate the plaintiff's constitutional rights. Saucier, 533 U.S. at 201. Thus, the court undertakes a two-step inquiry to address a qualified immunity defense: (a) whether the plaintiff's allegations state a claim that defendants' conduct violated a constitutional or statutory right; and if so, (b) whether that right was clearly established. Saucier, 533 U.S. at 206.

If the court determines that the facts alleged do not show that the officer's conduct violated a constitutional right, then the movant is entitled to summary judgment on the ground of qualified immunity. Id. at 201. In such cases, discovery is not appropriate. Siegert v. Gilley, 500 U.S. 226, 231 (1991).

To prove that the course of medical treatment he received amounted to a constitutional violation, an inmate must show that personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-106 (1976). Plaintiff must allege facts demonstrating that, objectively, defendant's "acts or omissions [were] sufficiently harmful," that the defendant's conduct caused serious injury or aggravation or deterioration of an existing medical condition. Id. at 106. An officer acts with "deliberate indifference" if he "knows of and disregards an excessive risk to inmate health or

safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official's intentional act or omission that merely delays an inmate's access to necessary medical care may state a constitutional claim, but only if plaintiff shows that the defendant's conduct resulted in substantial harm to the patient. Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008) (citing other cases).

### 3. Discussion

Howard has moved for summary judgment against Defendants Statzer, Lambert, V. Phipps, and McGowan as to Claim 2. These defendants have moved for summary judgment on the ground of qualified immunity. Because Howard's factual allegations and all reasonable inferences from those allegations do not support a finding that any of the defendants' actions caused him harm, the defendants are entitled to summary judgment on the ground of qualified immunity before completion of discovery.

Howard's allegations do not support a claim that anyone denied him medical care. He admits that nurses responded to his October 21, 2011, complaints about chest pain within the day, evaluated his condition, and referred him to see a doctor within a few days. Howard's belief that the nurses should have performed an EKG or taken other tests is nothing more than a disagreement with the course of treatment, which is not actionable under § 1983. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Howard also had no constitutional right to receive a response to his ERG within 8 hours. The fact that someone violated ERG procedures by failing to respond within the mandated time period is, at most, a violation of state regulations, which is not a constitutional violation and is not actionable under § 1983. Weller v. Dep't of Social Services, 901 F.2d 387, 392 (4th Cir. 1990). Moreover, Howard offers no authority on which he could bring a civil action for damages

against prison officials for violations of grievance procedures or for destruction of a grievance form.

Howard primarily argues that defendants' alleged conduct delayed his access to medical attention. This argument fails to state a constitutional claim because Howard offers no evidence that defendants' actions harmed him. Other than his own beliefs, Howard alleges no facts on which he could establish that he suffered a heart attack or any other serious medical emergency on October 21, 2011. It is common knowledge that the chest pain and breathing trouble Howard allegedly complained of that morning are not necessarily indicative of a heart attack and may also appear with other conditions, such as indigestion. Howard alleges that when nurses evaluated his condition in the evening of October 21, 2011, they found no medical need for emergency treatment and merely referred him to see the doctor. Howard does not allege or present any evidence that, after examining him on October 23, 2011, the doctor made any finding that Howard had actually suffered a heart attack or that he had suffered any other harm from the delay in providing him medical attention on October 21, 2011. Howard admits that the only treatment the doctor allegedly provided was a prescription for baby aspirin, a preventative regimen that Howard had followed years before. Thus, Howard's factual allegations do not show that any delay caused by defendants' actions resulted in any substantial harm to him, as required to state an Eighth Amendment claim in this context. Webb, 281 F. App'x at 166-67.

As Howard's allegations in Claim 2 thus fail to state a constitutional claim against any of the defendants named, these defendants are entitled to qualified immunity under the first facet of the Saucier procedure, and the court will grant their motions for summary judgment on this

7

ground.[6] 533 U.S. at 206. For the same reason, Howard fails to demonstrate that a reasonable juror could find in his favor on his medical claim, and as such, Howard's own motion for summary judgment must be denied as to Claim 2. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Finally, because Howard fails to allege that defendants Phipps, Statzer, McGowan, or Lambert were personally involved in any of the other constitutional violations alleged in this action, the court will direct the clerk to terminate them as parties.

### E. Claim 3: Excessive Force

It is well established that prison officials' "unnecessary and wanton infliction of pain" on an inmate rises to the level of a constitutional violation. Whitley v. Albers, 475 U.S. 312, 319 (1986), abrogated on other grounds by Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175 (2010). When an inmate alleges that officers used excessive force, the court asks: (a) whether officials, subjectively, applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm," Whitley, 475 U.S. at 320-21, and (b) whether the force applied was "nontrivial." Wilkins, 130 S. Ct. at 1779. The relevant factors to consider in this inquiry are: (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the threat reasonably perceived by the responsible officials based on the facts known to them, and (5) any efforts made

---

[6] Phipps, a registered nurse, submits an affidavit in support of her motion for summary judgment, in which she summarizes Howard's medical records. (ECF No. 25, Ex. A.) The records indicate that Nurse Scott examined Howard in response to his complaint of chest pain at 7:00 p.m. on October 21, 2011. She noted that Howard was not in acute distress, denied loss of consciousness, nausea, cough, vomiting, sweating, and fever. Scott took Howard's vital signs, and based on the results, did not perform an EKG, but did refer him to see the physician. On October 25, 2011, the doctor noted that Howard complained that for the past week, after a cell change, he had experienced recurrent chest pain, lasting for about a minute. Upon examining Howard, the doctor noted no unusual physical signs or manifestations. He noted that Howard complained of mild epigastric pain without gas or nausea. The doctor prescribed rest for chest pain and Enteric coated aspirin 81 miligrams once a day for 12 months. On this record, the court is satisfied that none of the defendants violated Howard's constitutional rights by delaying his access to medical care for a serious medical need on October 21, 2011. Nevertheless, the court grants the motions for summary judgment as to Claim 2 on the ground of qualified immunity.

to temper the severity of a forceful response. Id. at 321. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9 (emphasis added).

Liberally construing Howard's submissions concerning the events at issue in Claim 3, he presents the following factual allegations. On November 7, 2011, when he was only trying to get his medication during pill pass, Sgt. L. B. Phipps and Officers Fields, Head, and Whisenhunt attacked him with the pill pass box, and nails from the box punctured his left forearm and cut his wrist. Howard also alleges that Sgt. Phipps, knowing Howard has asthma, then administered pepper spray without medical authorization. Howard alleges that as supervising officer on the scene, Defendant Tate did not protect Howard from the uses of force by his subordinate officers. In addition to scars on his wrist, Howard allegedly suffered an asthma attack and coughed blood as a result of the incident.

The court concludes that on the face of his submissions, Howard has alleged sufficient facts to state a possible Eighth Amendment violation to survive defendants' initial assertion of qualified immunity. Taken in the light most favorable to him, Howard alleges that he was not posing any threat when the officers purposely injured his arm with the pill pass box and sprayed him with mace, which aggravated his asthma. Under such circumstances, these officers could not "reasonably believe that their actions were lawful." Henry, 652 F.3d at 531. Therefore, the court concludes that the security defendants' motion for summary judgment must be denied on the ground of qualified immunity as to Claim 3.

Defendants have submitted evidence about Howard's actions on November 7, 2011, and argue that under such circumstances, their uses of force against him represented a good faith

effort to restore order and did not violate his constitutional rights. Before addressing defendants' motion for summary judgment on the merits of Howard's excessive force claim, however, the court will direct them to respond to Howard's proper discovery requests related to Claim 3. To that end, the court will take defendants' motion for summary judgment under advisement, deny defendants' motions for protective order, and set a discovery schedule.

Defendants' affidavits disputing Howard's allegations of excessive force preclude Howard's motion for summary judgment on Claim 3. The court will deny his motion.

### F. Claim 4: Religious Diet Issues

The court finds that Claim 4 must be dismissed from this action without prejudice. Although Howard mentions Quinn Reynolds in the "affidavit" which sets out Claim 4, concerning Howard's religious diet, Howard did not identify Quinn Reynolds as a defendant in the title of his complaint, as required under Rule 10(a). Accordingly, on the docket, the court did not designate Reynolds as a defendant and did not attempt service of process on him. Thus, Reynolds is not a party to this case. Moreover, Howard does not allege any claim that the defendants who are currently parties in the case had any personal involvement in Howard's religious diet problems. See 28 U.S.C. § 1915A(b)(1) (authorizing summary dismissal where allegations fail to state claim on which relief can be granted).

The court takes judicial notice of the fact that Howard has raised a nearly identical religious diet claim in a separate § 1983 complaint, filed in July 2012, Howard v. Pleasant, et. al., Case No. 7:12CV00321. In the new case, Howard sues Quinn Reynolds, Officer C. Tiller, and Red Onion Food Service Director James Wade over their alleged involvement in the suspension of Howard's Common Fare Diet and/or in failing to correct mistakes that led to its suspension.

Under these circumstances, the court finds it appropriate to summarily dismiss Claim 4 from this lawsuit without prejudice. This disposition leaves Howard free to pursue his religious diet claim in his other civil action.

### G. Conclusion

For the stated reasons, the court grants Howard's motion for voluntary dismissal of Claim 1, grants defendants' motions for summary judgment on the ground of qualified immunity as to Claim 2; denies the security defendants' motion for summary judgment on the ground of qualified immunity as to Claim 3; and dismisses Claim 4 without prejudice to Howard's pursuit of his similar claim in his other pending civil action. As to the merits of Claim 3, the court takes the security defendants' motion for summary judgment under advisement and denies their motions for protective order as well as Howard's motions for summary judgment and default judgment. An appropriate order as to these matters will issue this day, in which the court will also address Howard's motions regarding discovery and set a discovery schedule.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 13th day of December, 2012.

_____
Chief United States District Judge